IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
        )
    Plaintiff,    )
        )
vs.    ) No. 4:24-CR-00366-JAR
        )
JAMES DYETT,    )
        )
    Defendant.    )
        )

**SENTENCING MEMORANDUM**

Mr. James Dyett, by and through undersigned counsel, respectfully submits this sentencing memorandum to request that this Court follow the joint recommendation of the parties and sentence Mr. Dyett to a term of imprisonment of no greater than twelve months and one day.  However, consistent with the terms of the plea agreement, Mr. Dyett is specifically requesting a non-custodial sentence of probation in this matter.  Counsel submits that a sentence of probation in this matter would be sufficient, but not greater than necessary, to comply with the sentencing factors enumerated in 18 U.S.C. § 3553(a).

The advisory sentencing guidelines applicable to Mr. Dyett suggest that a range of 57-71 months be imposed.  However, this Court should "consider all of the § 3553(a) factors to determine whether the support the sentence requested." Gall v. United States, 552 U.S. 38, 50 (2007).  In doing so, this Court may not presume that the guidelines range is reasonable and must make an individualized assessment based on the facts presented. See Id.

I.    <u>Mr. Dyett's History and Characteristics—18 U.S.C. § 3553(a)(1)</u>

James M. Dyett, Jr., known to many by his middle name Marcus, was born on September 4, 1965, in Baltimore, Maryland.  He is the product of a 53-year union between his parents, James, Sr., and Dorothy.  An African American born near the tail end of the Civil Rights Movement, Mr. Dyett learned early on about struggles, terrorism, and disenfranchisement that the Black community—including his parents—faced in the aftermath of slavery and the Reconstruction Era.  Even as the world transitioned to a place more tolerant of racial equality, Mr. Dyett was acutely aware of recent history and was raised in a way that would insulate him from the issues that his parents dealt with growing up.

Mr. Dyett grew up in a deeply religious Christian family, and his faith continues to be one of the most important things in his life.  James, Sr., a pastor, would make sure that Mr. Dyett and the family were in church every Sunday and throughout the week.  As he got older, he learned to play the piano, and he became a church musician, using his ministry to worship through music.  That remains an integral part of his ministry today.  Despite what was going on outside the home, Mr. Dyett's parents worked tirelessly to ensure that he and his younger sister, Monica, had everything that they needed.  Their parents also instilled in them the belief that they could be whoever and whatever they wanted to be despite the era they were raised in.

Education was a primary focus in their family, and Mr. Dyett was incredibly

successful in that regard.  The lessons learned as a child stayed with him and kept him in school and church as opposed to jail and the legal system.  Because of his intense focus, he can also be referred to as Doctor Dyett, having earned his Ed.D in 2010.  He has been using his education to educate others, having been employed for almost 34 years as an Associate Professor—and later the Program Director—of the Physical Therapist Assistant Program at Baltimore City Community College.



Despite Mr. Dyett's educational and career success, the achievement that he is most proud of is the family that he has created and sustained since 1991.  It was that year that he married the love of his life, Dr. LaTonya Dyett.  They have been deeply in love and inseparable from the moment they met, and they will celebrate a union of 35 years in August.  Together, they have two daughters, Alyssia—another doctor in the family, currently employed as a pharmacist—and Ivana—a graduate student a Kansas State University.  LaTonya and Mr. Dyett played a major role in helping

Alyssia earn her Pharm.D. degree, and they currently assist Ivana with her tuition. Mr. Dyett uses the lessons he was taught growing up to ensure that his daughters enjoy an even better life than he did. Most importantly, he has imparted faith on his daughters, and the entire family worships together. The Dyett family even hosts biweekly game nights at their home to provide a safe space for fellow church members to gather, worship, and experience community.[1]

At 60 years old, Mr. Dyett is closer to the end than the beginning. His father passed away in 2018, and his mother, at 87 years old, may not have much time left. He hoped to lead a law-abiding life for all of his days, which is why he is deeply remorseful and ashamed that he has received his very first criminal conviction at his age. This case will be associated with him for the rest of his life. He wants to play his part in righting his wrongs by paying whatever restitution this Court may impose in conjunction with the civil case he is working to settle.[2] He simply asks this Court to consider his history, his absolute lack of a criminal history, his 34-year career as an educator, and the severe financial strain on his family in sentencing him to a term of probation so that he can begin paying restitution without the possibility of losing his job by going to prison—something that will likely make it incredibly difficult for Mr. Dyett to pay restitution upon his release.

---

[1] See Exhibit #1, which will be filed by hand contemporaneously with the filing of this memorandum.
[2] Case No. 4:22-CV-01391-JAR, a matter also pending before this Court.

II.    Nature and Circumstances of the Offense—18 U.S.C. § 3553(a)(1)[3]

Mr. Dyett does not dispute the seriousness of the offense, nor does he challenge his role in the money laundering conspiracy.  His role, however, is incredibly relevant to his request for probation in this matter.  His role was lesser than that of his codefendant, Lisa Burnett, as well as Richard Appelbaum, an individual involved in the conspiracy but charged separately.[4]

According to the PSR (Doc. # 122), the conspiracy began in approximately February 2022.  While the funds in the conspiracy were obtained by fraud, Mr. Dyett played no part in that.  While looking for ways to make extra money, Mr. Dyett came into contact with individuals purporting to work for a company named Coins2Trade in October 2022.  Mr. Dyett was offered employment through Coins2Trade, whereby he would be trained to convert large wire transactions into cryptocurrency and receive commission on those transactions.  Initially believing the opportunity to be legitimate, Mr. Dyett signed an employment contract (Exhibit #2).  The contract, to the untrained eye, gave an air of credibility to the scheme.  While he was supposed to receive a commission, Mr. Dyett estimates that he received less than $20,000 for his role.

Over the course of his involvement in the conspiracy, several red flags arose

---

[3] Mr. Dyett does not dispute the facts in the offense conduct section of the Presentence Investigation Report.  Because of this, Counsel will summarize Mr. Dyett's position on his role in the conspiracy and is not attempting to avoid acceptance of responsibility.

[4] Richard Appelbaum was convicted in Case No. 4:24-CR-00436-RWS.

that should have made Mr. Dyett withdraw from the conspiracy sooner, but he chose not to. Even after he knew that something was off, he chose to continue working with the individuals associated with Coins2Trade. In April 2023, Mr. Dyett was told that he would receive a large wire of approximately $2 million into his account. In addition, Ms. Burnett traveled to Baltimore to meet with Mr. Dyett and go to his bank to try to get the wire processed. After the initial branch flagged the wire as fraud, there was an attempt to visit another branch to change that outcome.

Ultimately, Mr. Dyett was involved in the conspiracy for approximately seven months until April 2023, when he did something that no one else associated with the conspiracy did—he willingly withdrew and went to the police. On April 23, 2023, Mr. Dyett—unaware that law enforcement was investigating this conspiracy already—contacted Maryland state police and advised that he was involved in transferring large sums of money he had received from others that he met online. Figuring that this was the province of the FBI, police officers forwarded this information. Approximately a month later on May 24, 2023, he met with agents from the FBI and provided them with truthful information about his role in the conspiracy.[5]

Again, Mr. Dyett is deeply remorseful for the harm that he had done through

---

[5] While the current edition of the Sentencing Guidelines has eliminated most departure provisions, the 2023 Sentencing Guidelines—in effect at the time of Mr. Dyett's indictment—contemplate a departure for the voluntary disclosure of the offense. See U.S.S.G. § 5K2.16 (2023). Mr. Dyett was unaware of the existence of an investigation into the scheme at the time that he contacted the FBI to disclose his involvement, and it is unclear as to whether the FBI had connected Mr. Dyett to the investigation prior to his voluntary disclosure.

this conspiracy.  He hopes to make amends to this Court, the victims of the conspiracy, and the community.  He believes that probation would permit him to do that by allowing him to remain the significant presence that he is in his community while also beginning his restitution payments as soon as the sentence is imposed through steady and gainful employment.  Mr. Dyett believes that his lesser role in the conspiracy, combined with his short time in the conspiracy, his voluntary withdrawal, and his willingness make contact with and assist law enforcement are all highly relevant and would justify a sentence of probation when combined with the remaining sentencing factors.

III.    Purposes of Sentencing—18 U.S.C. § 3553(a)(2)(A)-(D)

The requested sentence of probation in this matter would also fulfill the purposes of sentencing—retribution (§ 3553(a)(2)(A)), deterrence (§ 3553(a)(2)(B)), incapacitation (§ 3553(a)(2)(C)), and rehabilitation (§ 3553(a)(2)(D)).

A sentence of probation would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.  As mentioned above, this represents the first and only felony conviction in Mr. Dyett's 60 years of life.  For someone who has worked as hard as Mr. Dyett has to get his education and stay away from the legal system, a felony conviction is a significant stain on his legacy.  For the rest of his life, he will carry the stigma associated with a felony, and that may result in the loss of valuable rights that he enjoys.  Additionally, it is likely that Mr. Dyett will be paying restitution for the rest of his life giving the amount involved in the

conspiracy.  While retribution is important, restitution is of equal importance.  Being required to pay a significant amount of restitution is sufficiently retributive, and maintaining his employment is paramount to ensuring that his financial obligations to the victims, his home, and his church community are taken care of.

In the same vein, a sentence of probation would both adequately deter Mr. Dyett from committing future crimes and protect the community.  At 60 with no other criminal history to speak of, Mr. Dyett poses very little risk of reoffending.  A felony conviction by itself will serve to adequately deter Mr. Dyett, and being placed on a term of probation will ensure that he continues to abide by the law moving forward—much like he has done while on pretrial release, having accrued no violations—such that he will continue to be a major community resource and not a community risk.

Finally, the requested sentence would also assist with Mr. Dyett's rehabilitation.  Having a stable job is important for any criminal defendant upon their release into the community.  Mr. Dyett is the rare criminal defendant that has maintained employment for an extended period of time.  Specifically, he has held the same job for over three decades, something not seen very often.  Probation would permit him to keep that job and continue to work uninterrupted so that he can continue to make money that will be used to keep his family afloat and pay his obligations to the Court.  Given that he is near retirement age, going to prison and losing this job would make it incredibly difficult for Mr. Dyett to seek and obtain new employment upon his release, which in turn would severely limit his ability to meet

his restitution obligations.

IV.    The Kinds of Sentences Available –18 U.S.C. § 3553(a)(3)

Finally, this Court has several options in lieu of a sentence of incarceration that can be imposed in this matter. Probation is of course an alternative; however, within that sentence, this Court can impose additional restrictions on Mr. Dyett by way of conditions of supervision. The Presentence Investigation Report (Doc. # 122) contemplates a number of hours of community service in lieu of a term of incarceration. This Court can also impose a period of home detention as a special condition of Mr. Dyett's probation. Home detention would significantly limit Mr. Dyett's freedom of movement, but it would still allow him to work and attend church, things that are important to Mr. Dyett and important to the Court. Mr. Dyett would be willing to submit himself to any and all conditions that this Court has the authority to impose while on probation as an alternative to prison.

## CONCLUSION

Mr. Dyett understands the gravity of his involvement in the money laundering conspiracy. He understands the very real possibility of going to prison. He simply asks this Court to consider the content of this sentencing memorandum, the Presentence Investigation Report, and the numerous letters of support written on his behalf to determine that Mr. Dyett be given the opportunity to right his wrongs and make amends to his family, his community, the victims involved, and this Court.

WHEREFORE, for the foregoing reasons, Mr. Dyett respectfully requests that

this Court sentence him to a term of Probation.

Respectfully submitted,

/s/ *Tyler Keith Morgan*
TYLER KEITH MORGAN
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Tyler_Morgan@fd.org
ATTORNEY FOR JAMES DYETT

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Kyle Bateman, Assistant United States Attorney.

/s/*Tyler Keith Morgan*
TYLER KEITH MORGAN
Assistant Federal Public Defender